# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|                           |   |                             |
|---------------------------|---|-----------------------------|
| DANIEL B. COHEE,          | ) |                             |
|                           | ) |                             |
| Plaintiff                 | ) |                             |
|                           | ) |                             |
| v.                        | ) | Civil Action No. 13-1243-RGA |
|                           | ) |                             |
| CARL DANBERG, et al.,     | ) |                             |
|                           | ) |                             |
| Defendants                | ) |                             |

## DEFENDANTS' OPENING BRIEF IN SUPPORT OF
## THEIR MOTION FOR SUMMARY JUDGMENT

**STATE OF DELAWARE**
**DEPARTMENT OF JUSTICE**

Kenisha L. Ringgold, I.D. No. 5226
Deputy Attorney General
Delaware Department of Justice
820 North French Street
Wilmington, DE 19801
(302) 577-8400
Attorney for Defendants

June 9, 2016

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

NATURE AND STAGE OF PROCEEDINGS ................................................................ 1

SUMMARY OF FACTS ................................................................................................ 1

SUMMARY OF THE ARGUMENT .............................................................................. 5

ARGUMENT .................................................................................................................. 7

I.      STANDARD OF REVIEW .................................................................................. 7

II.     DEFENDANTS ARE ENTITLED TO ELEVENTH AMENDMENT
        IMMUNITY .......................................................................................................... 8

III.    SUPERVISORY DEFENDANTS COMMISSIONER DANBERG, WARDEN
        PHELPS AND CAPT. RISPOLI ARE ENTITLED TO SUMMARY JUDGMENT
        ON PLAINTIFF'S FAILURE TO PROTECT CLAIMS BECAUSE THEY WERE
        NOT PERSONALLY INVOLVED IN THE FEBRUARY 23, 2013 INCIDENT ............. 9

IV.     DEFENDANTS TOOK THE NECESSARY PRECAUTIONS TO PROTECT
        PLAINTIFF; THEIR ACTIONS AND EVIDENCE REFLECT THAT THEY
        WERE NOT DELIBERATELY INDIFFERENT TO PLAINTIFF'S SAFETY .............. 12

        A.      Defendants Did Not Subject Plaintiff to an Objectively Serious Risk of
                Harm in Violation of His Eighth Amendment Rights ............................................ 12

        B.      Defendants Were Not Deliberately Indifferent to a Substantial Risk of
                Serious Harm to Plaintiff.  Defendants Did Not have "Actual Knowledge"
                That Plaintiff Was Facing the Risk Yet Ignored the Risk ...................................... 16

V.      DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ................................. 18

VI.     PLAINTIFF FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES
        BECAUSE HE FAILED TO SUBSTANTIALLY COMPLY WITH DOC'S
        GRIEVANCE POLICY UNDER THE PLRA .................................................................. 19

CONCLUSION.................................................................................................................. 20

## TABLE OF AUTHORITIES

**CASE**                                                                                                      **PAGE**

*Africa v. Dukes,*
    492 F. App'x 251 (3d Cir. 2012) ...................................................................................17

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) ..............................................................................................7, 8

*Beers-Capitol v. Whetzel,*
    256 F.3d 120 (3d Cir. 2001) ........................................................................11, 12, 13

*Behrens v. Pelletier,*
    516 U.S. 299 (1996) ...................................................................................................19

*Bd. Of County Comm'rs of Bryan County, Oklahoma v. Brown,*
    520 U.S. 397 (1997) ...................................................................................................11

*Brooks v. Beard,*
    167 F. App'x 923 (3d Cir. 2006) ...............................................................................15

*Brooks-McCollum v. Delaware,*
    213 F. App'x 92 (3d Cir. 2007) ...................................................................................8

*Brown v. Muhlenberg Twp.,*
    269 F.3d 205 (3d Cir. 2001) .......................................................................................9

*Celotex Corp. v. Catrell,*
    477 U.S. 317 (1986) .....................................................................................................7

*City of Canton v. Harris,*
    489 U.S. 378 (1989) .....................................................................................................9

*Croom v. Wagner,*
    2006 WL 2619794 (E.D. Pa. Sept. 11, 2006) ..........................................................16

*Farmer v. Brennan,*
    511 U.S. 825 (1994) ..................................................................................13, 14, 16, 17

*Evancho v. Fisher,*
    423 F.3d 347 (3d Cir. 2003) .......................................................................................9

*Gilles v. Davis,*
    427 F.3d 197 (3d Cir. 2005) .....................................................................................19

*Graham v. Connor,*
    490 U.S. 386 (1989)...........................................................................................19

*Harlow v. Fitzgerald,*
    457 U.S. 800 (1982)...........................................................................................19

*Heggenmiller v. Edna Mahan Corr. Inst. For Women,*
    128 F. App'x 240 (3d Cir. 2005) .......................................................................9

*Hunter v. Bryant,*
    502 U.S. 224 (1991)...........................................................................................19

*Jones v. Bock,*
    549 U.S. 199 (2007)...........................................................................................19

*Jones v. UPS,*
    214 F.3d 402 (3d Cir. 2011) .......................................................................14, 15

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
    475 U.S. 574 (1986).............................................................................................7

*Montanez v. Thompson,*
    603 F.3d 243 (3d Cir. 2010) .............................................................................19

*Pearson v. Callahan,*
    555 U.S. 223 (2009)...........................................................................................19

*Reed v. Harpster,*
    2012 WL 2871797 (M.D. Pa. July 12, 2012) ......................................14, 16, 18

*Rode v. Dellarciprete,*
    845 F.2d 1195 (3d Cir. 1988) .......................................................................9, 10

*Sample v. Diecks,*
    885 F.2d 1099 (3d Cir. 1989) ...................................................................9, 10, 11

*Seminole Tribe of Fla. V. Florida,*
    517 U.S. 44 (1996)...............................................................................................8

*Simonton v. Tennis,*
    437 F. App'x 60 (3d Cir. 2011) ........................................................................17

*Spruill v. Gillis,*
    372 F.3d 218 (3d Cir. 2004) .............................................................................20

*Webb v. Lawrence County,*
        144 F.3d 1131 (8th Cir. 1998) .......................................................................... 15

*Will v. Michigan Dep't of State Police,*
        491 U.S. 58 (1989).............................................................................................. 8

## Other Authorities

42 U.S.C. § 1997e(a) ............................................................................................... 19

## NATURE AND STAGE OF PROCEEDINGS

Daniel Cohee ("Cohee" or "Plaintiff") commenced this litigation by filing a complaint and motion for leave to proceed *informa pauperis* on July 17, 2013. (D.I. Nos. 1 and 3). Plaintiff originally named Defendants Commissioner Carl Danberg[1] ("Commissioner Danberg"), Warden Perry Phelps ("Warden Phelps"),[2] Capt. Marcello Rispoli ("Capt. Rispoli"), Lt. Stanley Baynard ("Lt. Baynard"), Sgt. Raynard Jones ("Sgt. Jones"), Officer Jason Russell ("Officer Russell"), Officer Jamie Mitchell ("Officer Mitchell"), and Officer Della Boone ("Officer Boone"). The Original Defendants answered the Complaint on June 16, 2014, July 30, 2014 and February 22, 2016 respectively. (D.I. Nos. 34, 39, 93).

Plaintiff amended the complaint to add Sgt. Ernest Kemp ("Sgt. Kemp) and Officer James Janusiewicz ("Officer Janusiewicz") on September 14 2015. (D.I. 70, 77). The newly added Defendants answered the Complaint and on November 5, 2015, this Court issued a Memorandum Order that added the aforementioned Defendants on his failure to protect claim. (D.I. Nos. 77, 92,93).

The controlling discovery deadline was set for May 9, 2016 and there are no outstanding discovery requests at this time. (D.I. 97). The dispositive motion deadline is June 9, 2016. *Id.* This is Defendants' Opening Brief in Support of their Motion for Summary Judgment.

## SUMMARY OF FACTS

Plaintiff and his cellmate, Pernell Stroman ("Stroman") both have violent criminal histories. Plaintiff has been convicted of carjacking in the first degree, possession of a deadly weapon by a person prohibited, aggravated menacing, and assault in the 2nd degree. *Exhibit A,*

---

[1] Carl Danberg was appointed to the Court of Common Pleas in February 2013 and no longer serves as the Delaware Department of Correction's Commissioner.
[2] Perry Phelps was appointed as the Chief of the Bureau of Prisons effective on July 8, 2013.

1

*Cohee Offender Status Sheet.* Plaintiff was most recently sentenced on November 29, 2010. *Id.* The DOC conducts an objective risk assessment on each inmate to determine their security level which correlates. *Exhibit B, Classification Instruction Manual pg 1-9.* The factors used to determine risk include prior escapes, staff assaults, severity of offense, and the amount of bail which was set based on the offense. *Id.* If a male inmate scores higher than 17 points, the inmate is classified at maximum security. *Id.* Plaintiff's risk assessment at the time of the incident exceeded 17 points. *Exhibit C, Cohee's Risk Assessment Summary.*

Plaintiff's cellmate plead guilty to first degree murder, possession of a deadly weapon during the commission of felony, and first degree burglary. *Stroman Offender Status Street*[3]. Stroman was sentenced to life imprisonment. Plaintiff was sentenced on November 15, 2010. *Id.* Stroman's risk assessment at the time of assault exceeded 18 points. *Stroman Risk Assessment Summary.* Both were housed in building 23 a location for segregated inmates with higher disciplinary issues.

**The Morning of the Incident, February 23, 2012**

On February 23, 2012, Sgt. Jones, the officer in charge that day, along with Officer Russell, and Sgt. Kemp[4] were assigned the A and B tiers of the building 23, from 8:00 a.m. to 4:00 p.m. *Exhibit D, MHU Logbook.* Plaintiff was housed on the B tier. *Exhibit E, Housing History.* Officer Janusiewicz[5], was assigned to the C & D tiers of building 23.

---

[3] Stroman's Offender Status Sheet and Risk Assessment history have not been included in the exhibit due to the safety and security concerns connected with providing a current inmate with another inmates' institutional documents. Defendants will provide the document for in camera review upon request.

[4] In addition to Officer Russell and Sgt. Kemp, a third officer was also assigned to the A & B tiers for the same time period in building 23.

[5] Likewise, in addition to Officer Janusiewicz, two additional officers were assigned to the C & D tiers of building 23.

The Area Lieutenant conducted the area check at 10:32 a.m. *Exhibit D*. Sgt. Jones escorted inmates to lunch at 11:10 a.m. *Id.* Four additional security checks, as evidenced by "phone punches", were performed that morning, the last of which occurred on at 11:55 a.m. At 12:31 a Code 8 was called on the B-Tier. *Id.*

After the assault, Incident and Disciplinary reports were drafted and filed by staff. *See Exhibit F, Officer Janusiewicz IR 1095592, DOC000018-20; Sgt. Kemp IR 1095586, DOC000021-23; Nichols IR 1095587, DOC000024-26; and Russell IR 1095582, DOC000027-30.* Lt. Baynard was assigned to conduct the investigation. *Exhibit G Internal Affairs ("IR") Report.* Lt. Baynard delivered the report to Warden Phelps on February 24, 2012. *Id.* Lt. Baynard also provided a Grand Jury Synopsis to the state prosecutors. *Exhibit H, March 7, 2012, Grand Jury Synopsis.*

### Plaintiff's First Account of the February 23, 2012 Assault

Plaintiff has provided two accounts of the events leading up to the assault. The first account is taken from interviews taken during the (i) Internal Affair Investigation, (ii) Grand Jury Synopsis, and (iii) incident and disciplinary reports associated with the assault. These accounts were taken the day of the incident or shortly thereafter. The second account is taken from Plaintiff's affidavit which was filed with his Complaint nearly a year and a half after the incident. Plaintiff's first account is a follows. (D.I. 3, *Compl., Pl. Affidavit*)

Plaintiff, his cellmate, and other inmates were walking from the chow hall, headed toward their assigned cells. *Exhibit F, Kemp's IR 1095582*. In route, several inmates began to poke fun at Stroman's expense. *Exhibit H, March, 7 2012, Grand Jury Synopsis*. Plaintiff laughed the comments off. *Id.* Shortly thereafter, Plaintiff and Stroman were locked into their cell. *Id.* Sitting atop his bunk, Stroman asked Plaintiff if he thought what was said about him was funny, apparently believing Plaintiff was laughing at him along with the other inmates. *Id., Exhibit F, Glick's*

3

*interview IR 1095582, DOC000029.*  As Plaintiff attempted to explain that he did not laugh at him, Stroman attacked Plaintiff with a razor blade.  *Id.*  After a brief struggle, Plaintiff was able to push Stroman away.  *Id.*  Shortly after, officers came onto the tier and responded to the scene.  *Exhibit H, March, 7 2012, Grand Jury Synopsis.*

Plaintiff was initially treated by DOC's medical provider; thereafter, he was admitted to Kent General Hospital at 3:03 p.m.  *Exhibit I, Admission Summary, DOC000039-43.*  Plaintiff was treated for lacerations to his hand, cheek, face and lip.  *Id.*  Plaintiff was discharged the same day.  *Exhibit I Admission and Discharge Records, DOC00037-DOC000043.*  Upon Plaintiff's return, he was housed in the infirmary from February 23 – 27, 2012 and then he returned to his former building.  *Exhibit E, Housing History.*

Staff Lieutenant Lisa Glick ("St. Lt. Glick"), the Area Lieutenant on the tier that day, interviewed both Plaintiff and Stroman.  *Exhibit F, Officer Russell IR 1095582.*  Plaintiff told St. Lt. Glick he believed the attacked was caused by comments made by other inmates.  Stroman denied the assault.

### Plaintiff's Second Account of the February 23, 2012 Assault as Detailed in his July 2013 Affidavit

Stroman attacked Plaintiff with a razor between 12:00 noon and 12:45 p.m., *D.I. 3, Compl., Pl. Affidavit.*  It began when Plaintiff began to read the newspaper.  *Id.*  Plaintiff was reading a newspaper article and said out loud, "[l]ook this guy got charged for raping this girl, man you gotta be a sick person to have to [rape] a [woman] with all the girls in the world.  What a loser".  *Id.*

Plaintiff alleges Stroman asked him if he thought it was funny – apparently referencing the circumstances in the article.  *Id.*  Stroman, angered, told Plaintiff that he was convicted of first degree murder and rape of a white girl.  *Id.*  Stroman stated that he was sentenced to life with no parole.  Plaintiff tried to explain that he meant no offense with his comment, but Plaintiff could

4

not diffuse Stroman's anger.  Stroman attacked Plaintiff with a razor blade.  *Id.*  Plaintiff alleges it took well over 45 minutes for staff to arrive at Plaintiff's cell.  *Id.*

**Defendants' Account of the February 23, 2012 Incident, Sgt. Kemp, Officer Russell and Officer Janusiewicz are called to the scene of the assault**

At 12:30 p.m. on February 23, 2012, Sgt. Kemp, Officer Russell and Officer Janusiewicz escorted inmates from the C-Tier to the chow hall.  *Exhibit F, Sgt. Kemp's Incident Report.*  The officers heard loud banging from the B-Tier as they were leaving.  *Id.*  The banging ceased once the officers reached the B tier.  *Id.*  The officers entered the upper cells and reached Plaintiff's cell. *Id.*  They observed blood splatter on the window, floors and furniture.  *Id.*  The officers observed Plaintiff standing at the sink.  *Id.*  Plaintiff had cuts to his face and hands; Stroman was crouched on the floor with blood stains on his shirt and pants.  *Id.*  Officer Russell called a Code 8. *Id.* Stroman was stripped searched, but the weapon was never recovered.  *Id.*  Plaintiff told the officers that Stroman flushed the razor down the commode before the officers arrived.  *Exhibit J, Disciplinary Decision DOC000015-17,* D.I. 3, *Compl., Pl. Affidavit.*

St. Lt. Glick interviewed both the Plaintiff and Stroman just after the incident.  *Exhibit, Officer Russell IR 1095582.*  Plaintiff told her that Stroman became agitated with him, but he did not know why.  Plaintiff told St. Lt. Glick, it may have been due to comments made by other inmates on the tier.

## SUMMARY OF THE ARGUMENT

According to one of Plaintiff's accounts, on February 23, 2012, Plaintiff, his cellmate Stroman, and other inmates walked from lunch to their respective cells.  In route, several inmates made fun of Stroman and Plaintiff laughed it off with the inmates.  Stroman must have considered Plaintiff's laughter as a sign of disrespect.  After they were locked into their cell, inmate Stroman attacked Plaintiff with a razorblade.  Plaintiff sustained injuries to his face and hands.  Plaintiff's

alternate account, states that a comment he made concerning a newspaper article angered Stroman and triggered the assault.

This incident is unfortunate; however, to establish an Eighth Amendment "failure to protect" claim, Plaintiff must establish that the conditions of his confinement exposed him to a "substantial risk of serious harm" and that Defendants were "deliberately indifferent" to that risk. The facts cannot support Plaintiff's claim.

As a threshold matter, Defendants Officers Boone and Mitchell were not on duty the day of the incident. Further, Defendant Lt. Baynard was involved in the after-the-fact investigation. He had no responsibilities in the MHU and was not the Area Supervisor as Plaintiff alleges in his Complaint. Neither Defendant were personally involved in the events of the day.

With regard to the remaining Defendants, the evidence does not show any Defendant knew or could have known that Stroman posed a "substantial risk of serious harm" to Plaintiff. Even if Plaintiff could establish the "substantial risk of serious harm" element of his claim, the facts do not demonstrate requisite culpable state of mind that Defendants were aware of the risk, and disregarded it. Stroman was incensed either by remarks made by Plaintiff or other inmates. Defendants had no prior notice which could lead them to reasonably believe there would be an altercation between Plaintiff and Stroman. The Defendants on duty that day took the necessary safety precautions and could not have known that a specific conversation could trigger Stroman to attack Plaintiff.

The necessary safety precautions include evidence that required security checks were performed at the appropriate intervals on Plaintiff's tier. In addition, officers timely responded to Plaintiff after the altercation. Plaintiff received medical attention at the DOC and Kent General Hospital. After being discharged, Plaintiff was sent to recover in DOC's infirmary. He was later

placed in protective custody. Thus, Plaintiff's failure to protect claims are meritless and this Court should enter judgment in favor of Defendants.

**ARGUMENT**

## I.   STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 56(c), a party moving for summary judgment bears the burden of proving that no material issue of fact is in dispute. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 n.10 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party satisfies this initial burden, "the burden shifts to the non-moving party to go beyond the mere pleadings and present evidence through affidavits, depositions, or admission on file showing a genuine issue of material fact for trial." *Anderson v. Libby Lobby Inc., 477 U.S. 242, 248.* However, once the moving party advances evidence in support of its contentions, the nonmoving party must go beyond the pleadings and introduce affidavits and other evidence that will create a genuine issue of fact in order to avoid summary judgment. *Celotex*, 477 U.S. at 324.

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson* 477 U.S. at 247-48 (1986) (emphasis in original). Thus, only disputes that affect the outcome of a lawsuit properly preclude the grant of summary judgment. *Id.*

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. In deciding a motion for summary judgment, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury

could return a verdict for the plaintiff on the evidence presented." *Id.* at 252. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

Plaintiff claims Defendants are liable to him for injuries for failing to adequately protect him from the attack from his cellmate. Here, no genuine issue of material fact exists and Plaintiff has not established evidence upon which a jury could reasonably find for Plaintiff. Therefore, Defendants are entitled to judgment as a matter of law.

## II.    DEFENDANTS ARE ENTITLED TO ELEVENTH AMENDMENT IMMUNITY

The Eleventh Amendment shields states from suits by individuals when the state has not given its consent. *See Seminole Tribe of Fla. v. Florida,* 517 U.S. 44, 54 (1996). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citations omitted). Consequently, § 1983 claims for monetary damages against a state or a state official in his official capacity are barred by the Eleventh Amendment. *See id.* The State has not waived its immunity from suit in federal court, and although Congress can abrogate a state's sovereign immunity, it did not do so through the enactment of 42 U.S.C. § 1983. *See Brooks–McCollum v. Delaware*, 213 F. App'x 92, 94 (3d Cir. 2007).

Accordingly, the doctrine of sovereign immunity makes the grant of summary judgment appropriate as to this issue of immunity. For the above reasons, the Court should grant Defendants' Motion for Summary Judgment as to the official capacity claims raised against them that seek monetary damages.

**III.   DEFENDANTS COMMISSIONER DANBERG, WARDEN PHELPS, AND CAPT. RISPOLI ARE ENTILTLED TO SUMMARY JUDGMENT ON PLAINTIFF'S FAILURE TO PROTECT CLAIMS BECAUSE THEY WERE NOT PERSONALLY INVOLVED IN THE FEBRUARY 23, 2013 INCIDENT**

Liability in a § 1983 action cannot be predicated solely on the operation of respondeat superior. *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1988), see also *Evancho v. Fisher*, 423 F.3d 347, 353(3d Cir. 2003).   However, a plaintiff may set forth a claim for supervisory liability under § 1983 if he "(1) identif[ies] the specific supervisory practice or procedure that the supervisor failed to employ, and show[s] that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underlying's violation resulted from the supervisor's failure to employ that supervisory practice or procedure." *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir.2001) (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir.1989)).   It is not enough for a plaintiff to argue that the alleged injury would not have occurred if the supervisor had "done more." *Id*.   The Plaintiff must identify specific acts or omissions of the supervisor that evidence deliberate indifference and establish a link between the act or omission and the ultimate injury. *Id.*

Supervisory liability could attach if the supervisor implemented deficient policies and was deliberately indifferent to the resulting risk or the supervisor's actions and inactions were "the moving force" behind the harm suffered by the plaintiff. *Sample,* 885 F.2d at 1117-118; *see also City of Canton v. Harris*, 489 U.S. 378, (1989); *Heggenmiller v. Edna Mahan Corr. Inst. for Women*, 128 F. App'x 240, (3d Cir. 2005).

With regard to Defendants Commissioner Danberg, Warden Phelps, and Captain Rispoli ("Supervisory Defendants"), it is evident that they are named as defendants based upon their supervisory positions. ("A defendant in a civil rights action must have personal involvement in the

alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior.")
*Rode*, 845 F. 2d at 1207 (citing *Parrat v. Taylor*, 541 U.S. 527, 537 n.3).

Supervisory Liability cannot be imposed upon the Supervisor Defendants, because evidence does not establish that (i) Vaughn's current classification process or any policy created an unreasonable risk to Plaintiff; or (ii) that the "failure" to implement the policy Plaintiff puts forward, *i.e.* a new policy that would segregate "lifers from non-lifers from violent and non-violent offenders" created an unreasonable risk. (D.I. 3, *Compl. Pg, 7*). Plaintiff has not shown the current policy to be deficient, that Supervisor Defendants knew it was deficient and the Plaintiff's assault was the product of the DOC's policies.

When inmates enter the institution, they are given a risk assessment to determine the level of security classification. *Exhibit B, Classification Instruction Manual pg 1-9*. This classification is reviewed over time. Neither the DOC nor the Defendants can control or inoculate all incidents of prison violence. However, the DOC has implemented measures to reduce and protect inmates and staff alike from instances of violence. There is no showing the Defendants had any reason to believe Stroman would become violent based upon his sentence. Rather, Plaintiff's account demonstrates that the attack was the result of comments made which offended his cellmate. Plaintiff cannot establish a causal connection between any Vaughn policy (or the absence thereof), and the attack on February 23, 2012.

Plaintiff has failed to present any evidence which would advance his theory that the current classification process is flawed or non-compliant constitutionally. "[I]t is not enough for a plaintiff to argue that the constitutionally cognizable injury would not have occurred if the superior had done more than he or she did." *Sample*, 885 F.2d at 1118. Rather, the plaintiff must identify specific acts or omissions of the supervisor that evidenced deliberate indifference and persuade the

court that there is a "relationship between the identified deficiency and the ultimate injury." *Id.* (internal quotations omitted).

The issue of deficient policies within the supervisory context was weighed by the Third Circuit in *Beers-Capitol v. Whetzel*, 256 F.3d 120 (3d Cir. 2001). In *Beers-Capitol,* plaintiffs claim that the policies and procedures implemented and approved at the Youth Development Center at New Castle ("YDC") "created an unreasonably unsafe environment" which allowed a staff member to sexually abuse them over an extended period of time. *Beers-Capitol*, 256 F.3d at 135. The Plaintiffs supported their contention by producing a report that showed "YDC did not implement a number of policies that were standard or recommended in the juvenile detention field." *Id.* at 137. The Court opined that the report could have raised an issue of negligence, but, "plaintiffs' evidence [was] sufficient to create a genuine issue of material fact as to whether the above policies and practices created a risk of harm to the plaintiffs that was 'so great and so obvious' that [defendant] must have known of the excessive risk but was indifferent to it." *Id.* The Court noted that:

> deliberate indifference requires more than evidence that the defendants *should* have recognized the excessive risk and responded to it; it requires evidence that the defendant must have recognized the excessive risk and ignored it.

*Id.* at 138 (emphasis in original).

Plaintiff's attempt to impose liability on Commissioner Danberg, Warden Phelps, and Captain Rispoli on the basis of their positions, cannot be sustained because, there was a relevant policy or custom that actually caused the alleged constitutional violation, or that the Supervisory Defendants knew policies placed Plaintiff at risk yet chose to ignore it. *See Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 404 (1997).

Plaintiff had no contact with Commissioner Danberg or Warden Phelps. Plaintiff's involvement with Capt. Rispoli occurred only in connection with the Disciplinary Hearing which occurred after the altercation. Capt. Rispoli found Plaintiff not guilty of (i) assault, (ii) fighting, and (iii) creating a health or safety or fire hazard. *See Exhibit J. Disciplinary Hearing Decision.*

In this case there is no pattern of inmate violence from inmates serving life sentences, nor any specific threat posed by Stroman. Therefore, Plaintiff cannot show that the Sueprvisory Defendants knew Plaintiff was at risk due to the policy. See *Beers-Capitol*, 256 F.3d (citing *Lewis v. Richards*, 107 F.3d 549, 553 (7th Cir. 1997) (holding that a plaintiff cannot make out a deliberate indifference claim against prison officials for a prison attack when the plaintiff presented evidence that the defendants knew of the attack afterwards but presented no evidence that defendants knew of the risk to the defendant before the attack).

Here, Plaintiff offers his anecdotal experience in connection to an isolated incident to support his claim that the classification policies and practices violate his constitutional rights. However, this is not sufficient. Plaintiff must submit evidence that Supervisory Defendants knew or should have known of an unreasonable risk, and that the Supervisory Defendants ignored it. Supervisory Defendants are entitled to summary judgment because there is no evidence of the sort.

## IV. DEFENDANTS TOOK THE NECESSARY PRECAUTIONS TO PROTECT PLAINTIFF; THEIR ACTIONS REFLECT THAT THEY WERE NOT DELIBERATELY INDIFFERENT TO PLAINTIFF'S SAFETY.

### A. Defendants Did Not Subject Plaintiff to an Objectively Serious Risk of Harm in Violation of His Eighth Amendment Rights.

The undisputed facts of this case fail to establish that any Defendant, Sgt. Jones, Officer Russell, Officer Mitchell, Sgt. Kemp, and Officer Janusiewicz of Vaughn knew that Plaintiff was exposed to an "excessive risk of to his safety" on February 23, 2012. The assault did not occur in the presence of the Defendants or any other officers. Plaintiff's account of the assault

12

demonstrated that the catalyst for the assault was because of a specific exchange between the Plaintiff and his cellmate on that day. Therefore, Plaintiff cannot establish the Defendants knew of an excessive risk to Plaintiff's safety – which is an absolute requirement under *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) .

An Eighth Amendment claim against a prison official must meet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind." *Id.* (internal quotation marks and citations omitted). In prison conditions cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety." *Id.* "'Deliberate indifference' is a subjective standard under *Farmer* – the prison official – defendant must actually have known or been aware of the excessive risk to inmate safety." *Beers-Capitol*, 256 F.3d at 125. As the *Farmer* Court noted, "deliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835.

*Farmer* rejected an objective test for deliberate indifference; instead it looked to what the prison official actually knew rather than what a reasonable official in his position should have known. The Court held that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." *Id.* at 837.

This requirement of actual knowledge means that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* The *Farmer* Court additionally stated that "to survive summary judgment, [the plaintiff] must come forward with evidence from which it can be inferred that the

13

defendant-officials were at the time suit was filed, and are at the time of summary judgment, knowingly and unreasonably disregarding an objectively intolerable risk of harm." *Id.* at 846.

An inmate may demonstrate that he was exposed to a substantial risk of serious harm by submitting evidence showing that inmate attacks were "'longstanding, pervasive, well-documented, or expressly noted by prison officials in the past.'" *Reed v. Harpster*, 2012 WL 2871797, at *5 (M.D. Pa. July 12, 2012). "[O]ne incident alone cannot suffice for proof of the sort of 'pervasive,' 'longstanding' and 'well-documented' risk of harm that is required for violation of the Eighth Amendment." *Id.* (quoting *Riley v. Jeffes*, 777 F.2d 143, 147 (3d Cir. 1985)).

Plaintiff claims that the Defendant officers who were present the day of the assault are liable because they were responsible for security checks and for monitoring the tier. D.I 3, *Comp. ¶4-8*. Plaintiff attacks the prison's layout asserting that it does not provide sufficient security. However, the records show security checks are performed regularly and the records reflected the Defendants were indeed alerted to Plaintiff's distress.

**Adequate Security checks were performed on Plaintiff's tier on February 23, 2012.**

Specifically, Plaintiff alleges Defendants Lt. Baynard, Sgt. Jones, Officer Boone, Officer Russell, Sgt. Kemp, Officer Mitchell,[6] and Officer Janusiewicz failed in enforcing polices or performing the necessary security checks. D.I. 3. *Comp. ¶¶ 4-8* However, this is the sort of unsupported allegation that must be disregarded. *See Jones v. UPS*, 214 F.3d 402, 407 (3d Cir.

---

[6] Plaintiff alleges Boone and Mitchell were responsible for security checks on the day he was assaulted. The logbook entries from February 23, 2012 reflect that Mitchell and Boone were not assigned to this building on the day of the assault. The incident reports and disciplinary reports also reflect that these officers did not have responsibilities in the Plaintiff's building on February 23, 2013. Lt. Baynard's involvement is limited to the Internal Affairs investigation as indicated in the record. *See Exhibit G*. Moreover Lt. Baynard was not assigned as the area supervisor on the day of the assault. The records show that another officer, St. Lt. Glick, was the area supervisor on the day of the attack. St. Lt. Glick is not a named Defendant.

2011) (at summary judgment, a plaintiff cannot rely on unsupported allegations. The Plaintiff must go beyond the confines of the pleadings and provide some evidence that would show that there exists a genuine issue for trial).

Plaintiff was housed on the B-tier in MHU Building 23. The logbook records movement in and out of the building. *Exhibit D, MHU Logbook*. The Building 23 logbook reflects Plaintiff's tier was checked for security purposes and documented by the logbook at 8:50 a.m., 9:55 a.m., 11:10 a.m., 10:32 a.m., 11:34 a.m., 11:55 a.m. *Id.; see, e.g. Webb v. Lawrence County*, 144 F.3d 1131, 1133 (8th Cir. 1998) (summary judgment to defendants although plaintiff "stated that jailers only came into the cell block once a day") *See Sgt. Jones Decl*.

With regard to the claims against Lt. Baynard, he was not assigned to the building. At the time of the incident he was an Institutional Investigator. He did not have responsibilities in the D-building. After the assault occurred, he conducted interviews, but was not responsible for "all issues and staff conduct related to operations and enforcement of policies regarding staff and inmate." *See D.I 3, Pl. Compl. ¶ 4; See Lt. Baynard Decl. See e.g., Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (participation in the after-the-fact review of a grievance is not enough to establish personal involvement). In addition, Officer Mitchell was not working at Vaughn, and was not "responsible for monitoring of the tier and its security checks upon that tier B block." *See, D.I. 3, Compl. ¶ 7; See Mitchell Decl.*

Officer Russell, Sgt. Kemp, Officer Janusiewicz and Sgt. Jones were working in the MHU building on the day of the assault. The officers performed their respective duties on that day as reflected by the logbook. *See Exhibit D, February 23, 2013 MHU logbook*. There is no evidence that could permit an inference that Defendants were aware of Plaintiff's criminal or disciplinary history, or that Stroman was in fact prone to violence. Moreover, Defendants were not involved

15

in Stroman's classification. *See, e.g., Reed*, 2012 WL 2871797, at *7 (plaintiff's unsupported allegations that cellmate posed a substantial risk of serious harm to plaintiff, in the face of the post-discovery summary-judgment record, did not create an issue of material fact); *Croom v. Wagner*, 2006 WL 2619794, at *6 (E.D. Pa. Sept. 11, 2006) (plaintiff failed to establish that his cellmate displayed violent tendencies and could not prove the existence of a substantial risk of serious harm).

Thus, Plaintiff's allegations, standing alone, do not establish a substantial risk of serious harm. Without more, Plaintiff cannot establish that he was housed under conditions creating a substantial risk of serious harm in violation of the Eighth Amendment.

**B.      Defendants Were Not Deliberately Indifferent to a Substantial Risk of Serious Harm to Plaintiff.   Defendants Did Not Have "Actual Knowledge" That Plaintiff Was Facing the Risk, Yet Ignored the Risk.**

As discussed above, Plaintiff has presented no evidence to establish that he was housed under circumstances that presented a substantial risk of serious harm. In addition, Plaintiff has presented no evidence to demonstrate that Defendants knew of or could have been known that Stroman posed a risk on February 23, 2012.

A finding of deliberate indifference requires that "[t]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer, 511 at 837.* Nonetheless, "[a]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Id.* at 838. In addition, "[p]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted. A prison official's duty under the Eighth Amendment is to ensure 'reasonable safety.'" *Id.* at 844.

16

The Supreme Court further concluded that prison officials have the "unenviable task of keeping dangerous men in safe custody under humane conditions." *Id.* at 845. The Court noted that "prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." *Id.* at 845.

In *Simonton*, the plaintiff filed litigation claiming that certain prison officials failed to protect him from his cellmate after a physical altercation occurred between the two. *Simonton v. Tennis*, 437 F. App'x. 60 (3d Cir. 2011). In *Simonton,* the Court noted that the records did not show that plaintiff was incarcerated under conditions posing a substantial risk of serious harm. The Court noted that a substantial risk of serious harm generally cannot be proven by a single incident. *Id.* (citing *Riley v. Jeffes,* 777 F.2d 143, 147(1985)). All of the evidence pointed to the conclusion that the attack occurred without forewarning, and it was unanticipated by the plaintiff and defendants. Accordingly, the court dismissed plaintiff's failure to protect claim.

Likewise, in *Africa v. Dukes*, 492 F. App'x. 251 (3d Cir. 2012), the plaintiff asserted a failure to protect violation under the Eighth Amendment, when his cell mate attacked and stabbed him. The Plaintiff alleged that the officer knew of and was well aware of the cellmate's dangerous history. However, there was no evidence to allow the inference that Defendants actually knew of the cellmate's dangerous history. The Court thusly dismissed the plaintiff's failure to protect claim.

The evidence gathered in this case reveals many similarities between the instant case, *Simonton* and *Africa.* As in *Simonton* and *Africa*, Defendants here had no reason to believe that Plaintiff would behave in a violent or threatening manner such that Defendants or any other officers would know he posed a risk of substantial harm to Plaintiff. Indeed, the Plaintiff described the incident as a "surprise attack". D.I. 3, *Compl., Pl. Affidavit.* The officers performed the

17

necessary security checks, called a code when alerted to the attack, and facilitated Plaintiff's medical treatment.

The last security check prior to the assault occurred on Plaintiff's tier at 11:55 a.m. Plaintiff alleges the attack occurred between 12:00 noon and 12:45 p.m. The Logbook shows a Code 8 was called at 12:31 p.m. Plaintiff alleges the time between the attack – which has not been established definitively – and the officer response was too long. As the Courts have noted, "prison officials have the "'unenviable task of keeping dangerous men in safe custody under humane conditions.'" *Farmer,* 511 U.S. at 845. "Courts should afford prison officials 'wide ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. *Reed,* 2012 WL 2871797, at * 5. Thus, "Courts must be sensitive to the State's interest in punishment, deterrence, and rehabilitation, as well as the need for deference to experienced and expert prison administrators faced with the difficult and dangerous task of housing large numbers of convicted criminals." *Id.,* (quoting *Brown v. Plata,* 131 S. Ct. 1910, 1921 (2011)). It would be inconsistent with the deference principles cited above to find that a genuine issue of fact exists as to whether Defendants failed to protect Plaintiff where: (i) the record indicates that the security checks were performed on February 23, 2012; (ii) Plaintiff was provided medical treatment; and (iii) Plaintiff presents no evidence to prove that Defendants acted unreasonably. Thus, Plaintiff's Eighth Amendment failure to protect claim must be dismissed.

## V.     DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.

Qualified immunity shields government actors acting within the scope of their discretionary authority for civil damages insofar as their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would have known. *Behrens v. Pelletier*, 516 U.S. 299, 305 (1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

For Plaintiff to overcome qualified immunity, the following elements must be established: the defendants' action violated a constitutional right and the constitutional right, at issue, if violated was clearly established in light of the specific factual circumstances of the particular case. *Montanez v. Thompson*, 603 F.3d 243 250 (3d Cir. 2010); *Pearson v. Callahan*, 555 U.S. 223, 230-31 (2009). The key issue for purposes of qualified immunity is whether State Defendants' actions were objectively reasonable in light of the facts and circumstances confronting them. *Graham v. Connor*, 490 U.S. 386, 397 (1989).

The qualified immunity standard gives ample room for mistaken judgments by protecting ***all but the plainly incompetent*** or those ***who knowingly violate the law***. *Hunter v. Bryant*, 502 U.S. 224, 229 (1991); (emphasis added); *Gilles v. Davis*, 427 F.3d 197, 204 (3d Cir. 2005).

For the reasons provided above, Plaintiff cannot establish that the Defendants violated his constitutional rights. The officers acted reasonably in performing security checks and responded to Plaintiff's needs after the attack. There is no evidence to demonstrate that the Defendants conduct was the product of mistaken judgment, or even mere negligence.

## VI. PLAINTIFFS FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES BECAUSE HE FAILED TO SUBSTANTIALLY COMPLY WITH DOC'S GRIEVANCE POLICY UNDER THE PLRA

The Prison Litigation Reform Act ("PLRA") requires that "to properly exhaust administrative remedies prisoners must complete the administrative review in accordance with the applicable procedural rules, rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218, (2007) (internal quotes omitted); 42 U.S.C. § 1997e(a). To "complete the administrative review process," means "substantial" compliance with

19

the prison's grievance procedures. *Spruill v. Gillis*, 372 F.3d 218, 231 (3d Cir. 2004) (citing *Nyhuis v. Reno*, 204 F.3d 65, 77-78 (3d Cir. 2000)

The DOC's Grievance Policy 4.4 states that inmates must file their grievances within seven days of the incident.  Plaintiff filed grievance #269345 on June 25, 2013, a year and four months after the date of the incident.  There are no other grievances that could conceivably be connected to the February 23, 2012 Incident.  *Decl. Matthew Dutton*.  Plaintiff did not adhere to Grievance Policy 4.4, and thereby failed to exhaust his administrative remedies.  *See Exhibit K, Policy 4.4*.  Grievance #269345 does not contain any facts or circumstances related to the February 23, 2014 Incident.  *See Exhibit L, Grievance 269345, DOC000012*.  This grievance could not alert the prison officials with regard to the February 23, 2012 incident.  *See Jones*, 549 U.S. at 219, (the primary purpose of a grievance is to alert prison officials to a problem).  Therefore, Plaintiff did not substantially comply with the exhaustion requirement and Plaintiff's claims against the State Defendants are barred.

## CONCLUSION

Plaintiff has failed to establish that a reasonable jury could find a constitutional violation based on the record in this case.  Thus, Plaintiff's 42 U.S.C. § 1983 claim, alleging that Defendants failed to protect him in violation of the Eighth Amendment, must be dismissed.  The State respectfully requests that this Court enter judgment in favor of Defendants.

STATE OF DELAWARE
DEPARTMENT OF JUSTICE

/s/ Kenisha L. Ringgold
Kenisha L. Ringgold (I.D. No. 5226)
Deputy Attorney General
Delaware Department of Justice
820 North French Street
Wilmington, DE 19801
(302) 577-8400